CASE NO. 3:19-CV-00978-M
BANKR. CASE NO. 03-33479-BJH

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

———————————————————

IN RE: RENAISSANCE RADIO, INC., DEBTOR
———————————————————

DAVID A. SCHUM,
*Appellant*,

v.

FORTRESS VALUE RECOVERY FUND I LLC, ET AL.,
*Appellees.*

———————————————————

APPEAL FROM THE ORDER OF THE UNITED STATES BANKRUPTCY
COURT FOR THE NORTHERN DISTRICT OF TEXAS DENYING
MOTION TO REOPEN BANKRUPTCY CASE, RECONSIDER AN ORDER
AND RECONSIDER AND DENY CERTAIN CLAIMS
———————————————————

BRIEF OF APPELLEE FORTRESS VALUE RECOVERY FUND I LLC
———————————————————

Matthew W. Moran, SBT # 24002642
Katherine Drell Grissel, SBT # 24059865
Devin L. Kerns, SBT # 24110081
mmoran@velaw.com
kgrissel@velaw.com
dkerns@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
(214) 220-7700 (Telephone)
(214) 220-7716 (Facsimile)

*Attorneys for Appellee*
*Fortress Value Recovery Fund I LLC*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Federal Rule of Civil Procedure 7.1 and Local Rules 3.1(c), 3.2(e), and 7.4, Appellee Fortress Value Recovery Fund I LLC ("<u>Fortress</u>"), identifies the following:

a. The following is a list of entities which are Fortress's parent company or a publicly held corporation that owns 10% or more of its stock:

None.  Fortress is owned by its members, none of which is a publicly held corporation owning 10% or more of Fortress.

b. The following is a complete list of all persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent or subsidiary corporations, or other legal entities that are financially interested in the outcome of the case:

David A. Schum;

Renaissance Radio Inc. (and all creditors and parties in interest affected by its confirmed plan of reorganization);

The Watch, Ltd. (and all creditors and parties in interest affected by its confirmed plan of reorganization);

Schulte Roth & Zabel LLP; and

Fortress Value Recovery Fund I LLC.

# TABLE OF CONTENTS

TABLE OF CONTENTS........................................................................ i

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT REGARDING ORAL ARGUMENT .............................1

STATEMENT OF JURISDICTION...................................................... 1

ISSUES PRESENTED...........................................................................2

STANDARD OF APPELLATE REVIEW..............................................2

STATEMENT OF THE CASE................................................................3

    I.     The RRI Bankruptcy .................................................................6

    II.    The Watch Bankruptcy.............................................................7

    III.   Schum's Multiple Successive Appeals ....................................8

         A.    Schum appeals the Sale Approval Order to the District
               Court and the Fifth Circuit.............................................8

         B.    Schum fights the transfer of the Radio Station Assets at the
               FCC, D.C. Circuit, and U.S. Supreme Court............................9

    IV.   Procedural History Related to the Motion and Present Appeal ..........12

SUMMARY OF ARGUMENT ..............................................................13

ARGUMENT ........................................................................................14

    I.     Schum's Requested Relief is Time-Barred. ...........................14

         A.    Schum cannot now seek to revoke the RRI Confirmation
               Order. .............................................................................14

         B.    Schum's delay in filing his Motion is inexcusable...................17

    II.    Schum's Motion is Equitably Moot. ...................................20

    III.   Schum has Failed to Demonstrate Zwirn or its Attorneys
         Committed Fraud................................................................22

         A.    Schum cannot demonstrate fraud under Federal Rule of
               Civil Procedure 60. .......................................................22

         B.    All of Schum's fraud arguments fail.......................................23

             i.     Because 47 U.S.C. § 310(b) does not apply to
                   lenders, the alleged omission of BNLI's domicile
                   does not demonstrate fraud............................................23

i

ii.     Schum's allegations that he was misled about the
        identity of the lender do not demonstrate fraud. ............26

IV.    Claim Preclusion Principles Bar Schum's Tired Allegations of
       Foreign Ownership. ............................................................................29

V.     This Court Should Declare Schum a Vexatious Litigant. ...................30

CONCLUSION .........................................................................................................31

# TABLE OF AUTHORITIES

## Cases

*Aoude v. Mobil Oil Corp.*,
892 F.2d 1115 (1st Cir. 1989) ............................................................................23

*Bailey v. Shell W. E&P, Inc.*,
609 F.3d 710 (5th Cir. 2010) .............................................................................22

*Barfield v. Howard M. Smith Co. of Amarillo*,
426 S.W.2d 834 (Tex. 1968) ........................................................................ 27, 28

*David A. Schum*,
21 FCC Rcd. 14996 (2006), 2006 WL 3814791 .................................... 7, 8, 9, 10

*Dennis J. Kelly*,
23 FCC Rcd. 2646 (2008), 2008 WL 440404 .....................................................10

*DFW Radio License, LLC*,
29 FCC Rcd. 804 (2014), 2014 WL 243375, *appeal dismissed*, 617 Fed.
App'x 5 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 1672 (2016) .................. passim

*Estate of Hester v. Nationsbank*,
59 F.3d 1242 (5th Cir. 1995) .............................................................................30

*Harrelson v. United States*,
613 F.2d 114 (5th Cir. 1980) .............................................................................30

*In Matter of The Watch Ltd.*,
257 Fed. App'x 748 (5th Cir. 2007) .....................................................................9

*In re Blast Energy Servs., Inc.*,
593 F.3d 418 (5th Cir. 2010) .............................................................................20

*In re Carroll*,
850 F.3d 811 (5th Cir. 2017) .............................................................................30

*In re Case*,
937 F.2d 1014 (5th Cir. 1991) ...........................................................................17

*In re Colley*,
814 F.2d 1008 (5th Cir. 1987) ........................................................................3, 16

*In re CTLI, LLC*,
534 B.R. 895 (Bankr. S.D. Tex. 2015) ......................................................... 16, 21

*In re Faden*,
96 F.3d 792 (5th Cir. 1996) .................................................................................2

*In re Guzman*,
   130 B.R. 489 (Bankr. W.D. Tex. 1991) ..............................................................19

*In re Johnston*,
   207 B.R. 142 (S.D. Tex. 1996), *aff'd*, 129 F.3d 609 (5th Cir. 1997)..................18

*In re Manges*,
   29 F.3d 1034 (5th Cir. 1994)..................................................................... 20, 21

*In re Min*,
   No. 16-33804-SGJ-7, 2018 WL 2041720 (N.D. Tex. May 2, 2018)....................2

*In re Pac. Lumber Co*.,
   584 F.3d 229 (5th Cir. 2009)..................................................................... 20, 21

*In re Renaissance Radio, Inc*.,
   Case No. 03-33479-bjh11 (Bankr. N.D. Tex.) .......................................... 4, 6, 31

*In re The Watch Ltd*.,
   295 Fed. App'x 647 (5th Cir. 2008)................................................................5, 9

*In re The Watch, Ltd*.,
   Case No. 05-35874-BJH (Bankr. N.D. Tex.) ........................................... 6, 7, 31

*Kenner v. C. I. R.*,
   387 F.2d 689 (7th Cir. 1968)..........................................................................23

*Love v. Tyson Foods, Inc*.,
   677 F.3d 258 (5th Cir. 2012) ...........................................................................3

*MidCap Media Fin., L.L.C. v. Pathway Data, Inc*.,
   No. 18-50650, 2019 WL 2943486 (5th Cir. July 9, 2019)...................................8

*Nat'l City Golf Fin. v. Scott*,
   899 F.3d 412 (5th Cir. 2018)..................................................................... 18, 23

*Newby v. Enron Corp*.,
   302 F.3d 295 (5th Cir. 2002)..........................................................................30

*Request for Declaratory Ruling Concerning the Citizenship Requirements of*
   *Sections 310(b)(3) & (4) of the Commc'ns Act of 1934, as amended*,
   103 FCC 2d 511 (1985), 1985 WL 260010, *on reconsideration in part*, 1
   FCC Rcd. 12 (1986) ........................................................................................24

*Richard R. Zaragoza*,
   23 FCC Rcd. 2642 (2008), 2008 WL 440403, *order corrected*,
   BAL-20070216ABA (2008), 2008 WL 495751 ....................................... 5, 10, 21

*Richard R. Zaragoza*,
   24 FCC Rcd. 5743 (2009), 2009 WL 1405882...............................................5, 11

iv

*Rozier v. Ford Motor Co.*,
   573 F.2d 1332 (5th Cir. 1978) ............................................................... 23, 26

*S.E.C. v. First Fin. Grp. of Tex.*,
   645 F.2d 429 (5th Cir. 1981) ......................................................................8

*Schum v. F.C.C.*,
   136 S. Ct. 1672 (2016) ..............................................................................11

*Schum v. F.C.C.*,
   136 S. Ct. 2481 (2016) ..............................................................................11

*Schum v. F.C.C.*,
   617 Fed. App'x 5 (D.C. Cir. 2015) ..........................................................11

*Schum v. Zwirn Special Opportunities Fund, L.P.*,
   Case No. 06-cv-00391-N (N.D. Tex. 2006) ...............................................8

*Una Vez Mas Tex. Holdings, LLC*,
   25 FCC Rcd. 13409 (2010), 2010 WL 3738771 ......................................25

**Statutes**

11 U.S.C. § 105(a) ............................................................................................30

11 U.S.C. § 1144 ................................................................................. 14, 15, 18

11 U.S.C. § 350 ...................................................................................................2

11 U.S.C. § 350(b) .................................................................................... 17, 22

11 U.S.C. § 363 ...................................................................................................7

11 U.S.C. § 502(j) ................................................................................ 3, 16, 17

28 U.S.C. § 1334 .................................................................................................1

28 U.S.C. § 157 ...................................................................................................1

28 U.S.C. § 158(a) ..............................................................................................1

28 U.S.C. § 1651 ...............................................................................................30

47 U.S.C. § 310 .................................................................................................10

47 U.S.C. § 310(b) ..................................................................................... 24, 25

47 U.S.C. § 310(b)(2) ........................................................................................25

**Rules**

Fed. R. Bankr. P. 3008 .....................................................................................17

Fed. R. Bankr. P. 5010 .....................................................................................17

Fed. R. Bankr. P. 8018 ....................................................................................1

Fed. R. Bankr. P. 8018(a)(2) ...........................................................................1

Fed. R. Bankr. P. 8018(b) ................................................................................3

Fed. R. Bankr. P. 8018(b)(1) ...........................................................................3

Fed. R. Bankr. P. 8018(b)(2) ...........................................................................3

Fed. R. Bankr. P. 8018(e) ................................................................................3

Fed. R. Bankr. P. 9011 ....................................................................................5

Fed. R. Bankr. P. 9011(b) ..............................................................................30

Fed. R. Bankr. P. 9024 ..................................................................................22

Fed. R. Bankr. P. 9024(3) ..............................................................................15

Fed. R. Civ. P. 11(b) .....................................................................................30

Fed. R. Civ. P. 60 ................................................................................... 13, 26

Fed. R. Civ. P. 60(b)(2) ...................................................... 16, 18, 19, 22

Fed. R. Civ. P. 60(b)(2)-(3) ....................................................... 19, 22

Fed. R. Civ. P. 60(b)(3) ..................................................... 16, 22, 23, 26

Fed. R. Civ. P. 60(c) ....................................................................................16

Fed. R. Civ. P. 60(d) ...................................................................................22

Fed. R. Civ. P. 60(d)(3) ........................................................................ 19, 23

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Fortress Value Recovery Fund I LLC ("Fortress") believes that this appeal can be decided without the need for oral argument given the frivolous and repetitive arguments made by Appellant that have already been rejected many times over the past fifteen years by other tribunals.  To the extent the Court would find oral argument helpful, it will be handled on behalf of Fortress by one of the associates who have been active in the drafting of this brief.

## STATEMENT OF JURISDICTION

The United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") entered its final *Order Denying Motion to Reopen Bankruptcy Case, Reconsider an Order and Reconsider and Deny Certain Claims* ("Order").  R. 4-5.  The Bankruptcy Court also entered its *Memorandum Opinion Denying Motions to Reopen Case and to Reconsider Order and Deny Certain Claims* (the "Memorandum Opinion").  R. 7-25.  The Bankruptcy Court had jurisdiction over this core proceeding under 28 U.S.C. § 1334 and 28 U.S.C. § 157.  R. 12.

This Court has jurisdiction of this appeal under 28 U.S.C. § 158(a).  Complying with Bankruptcy Rule 8018, Appellee Fortress has filed this Brief within 30 days of the filing of Appellant's Brief on July 1, 2019 pursuant to Bankruptcy Rule 8018(a)(2).

1

## ISSUES PRESENTED

1.      Did the Bankruptcy Court properly exercise its discretion to deny Appellant's Motion to reopen the fifteen-year-old bankruptcy case and reconsider claims previously allowed pursuant to an order confirming a plan of reorganization for lack of "cause" because:

      a.  Appellant's attempt to revoke parts of a confirmed plan are time-barred and Appellant inexcusably delayed filing his Motion;

      b.  Appellant's claims are equitably moot;

      c.  Appellant failed to demonstrate that any fraud occurred anywhere;

      d.  Appellant's arguments are foreclosed by claim preclusion principles; and

      e.  Appellant's claims are frivolous and merit an order declaring him a vexatious litigant.

## STANDARD OF APPELLATE REVIEW

This Court reviews the Bankruptcy Court's decision on whether to reopen a case under 11 U.S.C. § 350 for abuse of discretion. *In re Faden*, 96 F.3d 792, 796 (5th Cir. 1996); *In re Min*, No. 16-33804-SGJ-7, 2018 WL 2041720, at *2 (N.D. Tex. May 2, 2018). A bankruptcy court abuses its discretion if it: "(1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or

2

(3) misapplies the law to the facts." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (quotation omitted).

A bankruptcy court's denial of a motion for reconsideration of allowed or disallowed claims under 11 U.S.C. § 502(j) is also subject to the abuse of discretion standard. *In re Colley*, 814 F.2d 1008, 1010 (5th Cir. 1987).

## STATEMENT OF THE CASE

This appeal is the latest installment in Appellant David A. Schum's never-ending and improper efforts[1] to undo the transfer of certain radio station assets (the "Radio Station Assets") to third parties in the mid-2000s.[2]  Schum was an equity

---

[1] Fortress notes that Schum, as Appellant, failed to file and serve an appendix with his brief in accordance with Bankruptcy Rule 8018(b)(1).  Although Bankruptcy Rule 8018(b)(2) does not require Appellee to correct this failure, Fortress notes that the paginated Record on Appeal is contained at Dkt. 4 on this Court's docket and includes the entirety of what would be required in an appendix under Rule 8018(b).  Fortress does not object to this Court treating Dkt. 4 as Appellant's required appendix or, alternatively, dispensing with the appendix requirement under Bankruptcy Rule 8018(e).  To the extent the Court would prefer an appendix be provided by Fortress, Fortress will supply such appendix upon request consistent with Bankruptcy Rule 8018(e).

[2] Schum's relevant litigation history is extensive.  To avoid repetition, this Statement of the Case recites only the most pertinent facts.  Appellee incorporates the background recited in its *Objection to David A Schum's Motion to Reopen Bankruptcy Case, Reconsider an Order and Reconsider and Deny Certain Claims and Points and Authorities in Support Thereof*, R. 685-710, and the facts contained in the Bankruptcy Court's *Memorandum Opinion Denying Motions to Reopen Case and to Reconsider Order and Deny Certain Claims*,  R. 7-25.

owner in businesses that initially held the Radio Station Assets.[3]  However, as a result of two successive corporate bankruptcies, the Radio Station Assets were sold to third parties.  Unsatisfied with that outcome, Schum has fought the transfer for almost fourteen years in the Bankruptcy Court, the District Court, the Fifth Circuit, the Federal Communications Commission, the D.C. Circuit, and even the United States Supreme Court.  Every tribunal to hear Schum's complaints has wholly rejected his arguments—and many have warned him about continuing with his frivolous litigation:

- **The Bankruptcy Court:**

    - "Schum is instructed to stop filing pleadings in these bankruptcy cases and in this Court (a) complaining about or pertaining to the estates' prior sale of their broadcasting assets as approved by this Court or any of the other matters set forth in the 2004 Motion, or (b) requesting relief where there is no admissible evidence to support such request, or (c) seeking relief which this Court lacks the authority to grant when such relief is sought.  While no monetary penalty is assessed, any

---

[3] Fortress acknowledges Schum's previous equity ownership in the relevant businesses. *See* R. 129.  However, Schum's assertion that he is the "majority owner" of "all of the entities" is unclear and unsupported by his citations to the Record. Appellant's Br. at 42 (citing R. 442, Schum's self-serving affidavit, and R. 744-45, his self-serving testimony at the Feb. 20, 2019 hearing on his Motion).  Additionally, the Court should decline to entertain any citation to Schum's improper Statement of the Evidence (*see* Appellant's Br. at 9-10) for the reasons articulated in Fortress's *Objections to Appellant's Statement of the Evidence.  In re Renaissance Radio, Inc.*, Case No. 03-33479-bjh11 (Bankr. N.D. Tex.) (Dkt. 300).

4

future violations by Schum of Bankruptcy Rule 9011 or this Order will be seriously addressed by the Court."[4]

- "Even if Schum's arguments had merit as a matter of law—and they do not, being essentially frivolous—he urges them far too late for relief."[5]

- **<u>Fifth Circuit</u>:** "[T]he present appeal is nothing but a repackaged attack on the Sale Approval Order by way of an appeal of the Reconsideration Order." *In re The Watch Ltd.*, 295 Fed. App'x 647, 650 (5th Cir. 2008).

- **<u>FCC</u>:**

  - "We thus agree with Bernard that Petitioners' [including Schum's] . . . attempts to reprise arguments already made and rejected is improper." *Richard R. Zaragoza*, 23 FCC Rcd. 2642, 2645 (2008), 2008 WL 440403, *order corrected*, BAL-20070216ABA (2008), 2008 WL 495751.

  - "The Petition, the Supplement and the Second Supplement are frivolous and obstructive pleadings which are wholly devoid of merit. Accordingly, we admonish the Petitioners [including Schum] for their attempts to further delay this proceeding." *Richard R. Zaragoza*, 24 FCC Rcd. 5743, 5748 (2009), 2009 WL 1405882.

  - "Notwithstanding their many attempts to do so with numerous untimely and unauthorized pleadings containing a myriad of speculative allegations, the Opposing Parties [including Schum] have simply failed to meet their statutory burden here." *DFW Radio License, LLC*, 29 FCC Rcd. 804, 822 (2014), 2014 WL

---

[4] R. 920.

[5] R. 8.

> 243375, *appeal dismissed*, 617 Fed. App'x 5 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 1672 (2016).

These prior admonitions have fallen on deaf ears, and Schum's vexatious patterns continue. This Court should quickly dismiss this appeal, exercise its inherent powers to declare Schum a vexatious litigant, enjoin him from filing further pleadings related to the *In re Renaissance Radio, Inc.* chapter 11 case, the *In re The Watch, Ltd.* chapter 11 case, or the Radio Station Assets without first obtaining permission of this Court, and order Schum to pay all costs and expenses incurred by Fortress in having to respond to his frivolous Motion and this appeal.

## I.     The RRI Bankruptcy

In the early 2000s, Appellant Schum was an equity interest owner in Renaissance Radio, Inc. ("RRI"), which obtained FCC permits to operate the Radio Station Assets. On April 1, 2003, creditors filed an involuntary chapter 7 petition against the failing RRI business. R. 85. The RRI bankruptcy case (the "RRI Case") was later converted to a chapter 11 case, which was the subject of Schum's Motion.

On January 8, 2004, the Bankruptcy Court entered its confirmation order ("RRI Confirmation Order")[6] confirming RRI's *Second Amended Plan of Reorganization* ("RRI Plan").[7] Under the confirmed plan, RRI transferred all of the

---

[6] R. 378.

[7] R. 128.

Radio Station Assets to a newly-formed entity, The Watch, Ltd.,[8] which purchased the Radio Station Assets through an exit loan ("Exit Financing Facility") provided by Bernard National Loan Investors ("BNLI") as lender, and Highbridge/Zwirn Special Opportunities Fund, L.P. ("Zwirn"),[9] as agent.[10]  Subsequently, the radio station licenses ("FCC Licenses") were transferred to DFW Radio License LLC, a wholly-owned subsidiary of The Watch.[11]

## II.    The Watch Bankruptcy

Less than two years after the confirmation of RRI's Plan, The Watch filed for chapter 11 bankruptcy on May 26, 2005.  R. 929.[12]  In that case, the debtors agreed to auction off substantially all of the Radio Station Assets to the highest bidder at a sale conducted under 11 U.S.C. § 363.  R. 933, 965.  The § 363 sale was conducted through an auction on October 13, 2005, at which Zwirn was the successful bidder

---

[8] R. 129, 149 (providing in the RRI Plan that RRI would transfer the Radio Station Assets to The Watch, Ltd.); 379 (observing in the RRI Confirmation Order that "the FCC approved the transfer of the applicable licenses and construction permits to The WATCH, Ltd.").

[9] Fortress Value Recovery Fund I LLC is the current name of Zwirn.  Zwirn changed its name to D.B. Zwirn Special Opportunities Fund, L.P., converted to a limited liability company, and then ultimately changed its name to Fortress.

[10] R. 128, 133-34, 148-50, 378-81.

[11] *David A. Schum*, 21 FCC Rcd. 14996, 14997 (2006), 2006 WL 3814791.

[12] This case, styled as *In re The Watch, Ltd*., Case No. 05-35874-BJH-11 (Bankr. N.D. Tex.), was jointly-administered for The Watch, Ltd., and DFW Radio License LLC.  R. 931-32.

through a credit bid.  R. 1005-07, 1046.  On December 28, 2005, the Bankruptcy Court entered an order approving the sale of the Radio Station Assets to Zwirn ("Sale Approval Order").  R. 1043.  Zwirn subsequently assigned its purchase right to Bernard Dallas, LLC ("Bernard Dallas"), an affiliated entity newly formed by Zwirn for the purpose of acquiring the Radio Station Assets.  *David A. Schum*, 21 FCC Rcd. at 14998.  On January 17, 2006, an application was filed with the FCC seeking consent to assign the FCC Licenses from DFW Radio License LLC to Bernard Dallas.  *Id*.  As discussed at length below, the FCC approved the assignment and twice rejected Schum's arguments that the assignment was improper.  Schum took that dispute all the way to the United States Supreme Court, losing every step of the way.  *See infra* at 9-11.

## III.   Schum's Multiple Successive Appeals

### A.   Schum appeals the Sale Approval Order to the District Court and the Fifth Circuit.

While FCC approval of the license transfers was pending, Schum appealed the Sale Approval Order to the District Court.  *Schum v. Zwirn Special Opportunities Fund, L.P.*, Case No. 06-cv-00391-N (N.D. Tex. 2006) [Dkt. 10].[13]  The District Court rejected his appeal for lack of standing.  *Id*. [Dkt. 19].  Schum appealed the

_____

[13] This Court may take judicial notice of public filings.  *See MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, No. 18-50650, 2019 WL 2943486, at *3 (5th Cir. July 9, 2019); *S.E.C. v. First Fin. Grp. of Tex.*, 645 F.2d 429, 433 n.6 (5th Cir. 1981).

8

Sale Approval Order to the Fifth Circuit, which dismissed his appeal as moot because Schum failed to obtain a stay of the Sale Approval Order pending appeal. *In Matter of The Watch Ltd.*, 257 Fed. App'x 748, 750 (5th Cir. 2007).

Undeterred in his quest to thwart the transfer of the Radio Station Assets, Schum refused to sign the FCC documents required to effectuate the license transfers.  As a result, Zwirn had to file *six* motions to compel Schum to sign the documents, and the Bankruptcy Court entered *six* orders permitting a third party to sign the documents on Schum's behalf.   R. 1062-1124.   Schum appealed the Bankruptcy Court's *Order Granting Sixth Motion to Compel David Schum to Sign Sale Documents as Required By the Sale Approval Order of This Court,* which permitted Zwirn's counsel to sign Schum's name to the sale documents. R. 1122. Both the District Court and the Fifth Circuit rejected Schum's appeals as moot.  R. 1125-26; *In re Watch Ltd.*, 295 Fed. App'x 647, 648 (5th Cir. 2008) (per curiam).

### B.   Schum fights the transfer of the Radio Station Assets at the FCC, D.C. Circuit, and U.S. Supreme Court.

Schum did not confine his incessant protests to courts within the Fifth Circuit.[14]  Schum also tried his hand at the FCC, to no avail.  Schum filed a petition at the FCC contesting the assignment of the licenses from DFW Radio License to Bernard Dallas.  *David A. Schum*, 21 FCC Rcd. at 14996.  At the FCC, Schum

_____

[14] R. 10.

9

complained that Zwirn and Bernard Dallas did not comply with FCC ownership restrictions set forth in 47 U.S.C. § 310. *Id.* at 14998. The FCC rejected his arguments twice. *Id.* at 15003 (granting the assignment of licenses to Bernard Dallas and rejecting Schum's "speculative foreign ownership allegations"); *Dennis J. Kelly*, 23 FCC Rcd. 2646, 2647-48 (2008), 2008 WL 440404 (denying Schum's petition for reconsideration and finding "nothing here that refutes the sworn statement by a [Zwirn] executive that '[t]here is no direct or indirect foreign equity ownership in Bernard Dallas LLC.'").

Before the FCC issued its first letter decision denying Schum's petition contesting the assignment from DFW Radio License to Bernard Dallas,[15] Bernard Dallas agreed to sell the Radio Station Assets to Principle Broadcasting Network—Dallas, LLC ("Principle Broadcasting") upon consummation of the sale between The Watch and Bernard Dallas. When Bernard Dallas applied for consent to assign the Radio Station Assets to Principle Broadcasting, Schum yet again objected and erroneously invoked 47 U.S.C. § 310. The FCC again twice rejected his arguments and admonished him about filing frivolous pleadings. *Richard R. Zaragoza*, 23 FCC Rcd. at 2644 n.12 (approving the assignment to Principle Broadcasting and observing that "[t]o the extent that [petitions to deny] are used for other than their

---

[15] *David A. Schum*, 21 FCC Rcd. 14996.

intended purpose, *e.g.*, for private financial gain, to settle personal claims, or as an emotional outlet, the public interest is disserved") (quotation omitted); *Richard R. Zaragoza*, 24 FCC Rcd. at 5744, 5748 (refusing to reconsider, admonishing Schum for filing "frivolous and obstructive pleadings," and noting that "the staff previously cautioned" Schum about using pleadings outside their intended purpose, and Schum "ha[s] ignored that caution.").

Blatantly ignoring the FCC's warnings, Schum ***once again*** sought review of the FCC letter decisions declining to reconsider his objections regarding the assignments to Bernard Dallas and to Principle Broadcasting.  Unsurprisingly, the FCC did not oblige.  *DFW Radio License, LLC*, 29 FCC Rcd. at 810-13 (holding that Schum's foreign ownership claims "are speculative, inferential and, in any event, based on hearsay and unrelated proceedings").

Schum appealed the transfer to Bernard Dallas to the D.C. Circuit Court of Appeals, which dismissed the appeal for lack of standing.  *Schum v. F.C.C.*, 617 Fed. App'x 5, 5-7 (D.C. Cir. 2015) (per curiam) (noting that Schum's proffered remedies were "all highly speculative").

Finally, the United States Supreme Court denied Schum's petition for writ of certiorari and denied his petition for a rehearing.  *Schum v. F.C.C.,* 136 S. Ct. 1672 (2016); *Schum v. F.C.C.,* 136 S. Ct. 2481 (2016).  But even the failure before the

U.S. Supreme Court has not dissuaded Schum.  He has come full circle in filing his

Motion in the Bankruptcy Court, starting the cycle yet again.

## IV.    Procedural History Related to the Motion and Present Appeal

On December 28, 2018, Schum filed his *Motion to Reopen Bankruptcy Case,*

*Reconsider an Order and Reconsider and Deny Certain Claims*, R. 395, 403, and a

*Memorandum of Points and Authorities in Support of Motion to Reopen Bankruptcy*

*Case; Reconsider an Order and Reconsider and Deny Certain Claims*, R. 411

(collectively, the "Motion") along with a corresponding Appendix. R. 440.

On January 28, 2019, Fortress filed its *Objection to David A. Schum's Motion*

*to Reopen Bankruptcy Case, Reconsider an Order and Reconsider and Deny Certain*

*Claims and Points and Authorities in Support Thereof*.  R. 685.  Schulte Roth &

Zabel ("Schulte") joined in Fortress's Objection.  R. 925.  The Bankruptcy Court

held a hearing on the Motion on February 20, 2019.  R. 732.

On April 4, 2019, the Bankruptcy Court issued its Memorandum Opinion,

finding, among other things:

- ". . . Schum's claim that Zwirn 'decided to go the fraud route' and used an 'illegal lender' – urged before in several forums and again to the FCC – is conclusory; no facts support it." R. 15.

- "Fundamentally, Schum is attempting to collaterally attack prior orders and raises issues actually litigated years ago." R. 17.

- "Even suspending disbelief in the plausibility of [Schum's] claim . . . Schum's delay in moving to reopen the RRI Bankruptcy is inexcusable

12

. . . His allegations are as implausible as the relief he seeks is impractical. Schum has not proven cause to reopen the case." R. 20.

- "Even if Schum's claims had merit – which they lack – Schum inexcusably tarried in pursuing relief after 2012[.]" R. 24.

The corresponding Order denying Schum's requested relief was entered on April 11, 2019. R. 4. On April 16, 2019, Schum filed a Notice of Appeal. R. 1.

## <u>SUMMARY OF ARGUMENT</u>

In filing this appeal, Schum demonstrates flagrant indifference to his prior failings and previous reprimands from multiple tribunals. He belabors issues from fifteen years ago, arguing that he has purported "new evidence" that he admittedly has known about since 2012.[16] Schum's eight "issues" on appeal—all of which rehash his many-times-rejected arguments—can be distilled down to three issues:

1. <u>First</u>:  Schum argues that the Bankruptcy Court abused its discretion in holding that Schum's Motion was untimely (Issues 3, 7, 8);

2. <u>Second</u>:  Schum argues that the Bankruptcy Court abused its discretion in holding that the relief requested in Schum's Motion was equitably moot (Issues 6, 8); and

3. <u>Third</u>:  Schum argues that the Bankruptcy Court abused its discretion in holding that Schum failed to demonstrate any kind of fraud entitling him to relief under Federal Rule of Civil Procedure 60 (Issues 1, 2, 4, 5).

---

[16] R. 423.

13

All of these arguments are meritless.  The Bankruptcy Court properly denied Schum's Motion for at least four reasons.

First, Schum's requested relief is untimely.  Schum's attempt to revoke parts of the long-ago-confirmed RRI Plan is time-barred under 11 U.S.C. § 1144. Moreover, Schum tarried inexcusably in filing his Motion fourteen years after confirmation of the RRI Plan, twelve years after the closure of the RRI Case, and nearly seven years after his discovery of the alleged "fraud."

Second, Schum's attempt to unravel the long-confirmed RRI Plan renders the relief requested in his Motion equitably moot.

Third, Schum has failed to demonstrate that any fraud occurred during the RRI Case or elsewhere.

Fourth, claim preclusion principles bar Schum's repetitive, previously-rejected arguments.

This Court likewise should reject Schum's meritless arguments.

## **ARGUMENT**

## I.    **Schum's Requested Relief is Time-Barred.**

### A.    **Schum cannot now seek to revoke the RRI Confirmation Order.**

Although Schum's Motion is styled as one to reopen a bankruptcy case and reconsider claims, his requested relief would require a revocation of portions of the RRI Confirmation Order.  Specifically, Schum seeks to unwind the payment of claims that were (a) approved by the Confirmation Order and (b) paid through the

14

Exit Financing Facility, as set forth in the RRI Plan, that was also approved by the Confirmation Order.[17]   Schum grounds his request to unwind these claims on allegations of fraud-on-the-court allegedly occurring during the RRI Case. However, not only is the fraud-on-the-court claim meritless (for the reasons described in Part III below), it is also time-barred.

Schum had only 180 days after the January 8, 2004 entry of the RRI Confirmation Order to file a complaint to revoke it based on fraud.  Fed. R. Bankr. P. 9024(3) ("a complaint to revoke an order confirming a plan may be filed only within the time allowed by §1144 . . ."); 11 U.S.C. § 1144 ("On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and

---

[17] R. 434 ("Schum purposely does not seek to have the Judge set aside the *entire* Plan of Reorganization and create the accompanying administrative nightmare" (emphasis added)).  *See also* R. 405-07 (Schum Motion seeking return of funds paid on account of Exit Financing claims); R. 143 (RRI Plan provision noting: "DIP Facility and Exit Financing Facility Costs.  The holder of the DIP Facility and the holder of the Exit Financing Facility [Zwirn] shall receive cash from the Exit Financing Facility on the Plan Closing Date equal to the unpaid amount of such claims . . ."); 148-49 (". . .on the Plan Closing Date, the following will occur: . . . The WATCH, Ltd., The RADIO CAFÉ, LLC, DFW Radio, Inc., Dave Schum, holders of Allowed Class 5 Voluntarily Subordinated Claims and/or the Debtor . . . will . . . pay all of the costs associated with the closing of the Exit Financing Facility from its funding"); 378 (confirming the RRI Plan).

only if such order was procured by fraud."). His requested relief is thus time-barred.[18]

Schum's attempt to revoke or modify the RRI Confirmation Order must also fail because there is no "cause" at this late date to reconsider claims under 11 U.S.C. § 502(j).[19] The discretion afforded to courts under this provision "should not . . . encourage parties to avoid the usual rules for finality of contested matters." *In re Colley*, 814 F.2d at 1010. But, in any event, no cause exists because Schum's fraud argument hinges on FCC regulations that do not apply here (as discussed *infra* in Part III.B.i.), and all of his Federal Rule of 60(b) theories are untenable (as discussed *infra* in Part III).

For all of these reasons, the Court should deny Schum's time-barred attempt to revoke portions of the Confirmation Order. *See In re CTLI, LLC*, 534 B.R. 895, 910 (Bankr. S.D. Tex. 2015) (noting "there can be no partial revocation of a confirmation order" because doing so would "knock the props out from under the authorization for every transaction that has taken place") (quotation omitted). This

---

[18] While it is unclear whether the one-year provision in Federal Rule of Civil Procedure 60(c) was applied by the Bankruptcy Court (*see* R. 12), it is not necessary to rely on such provision as Rule 60(b)(2) requires diligence (which Schum did not exercise) and Rule 60(b)(3) requires fraud (which Schum did not and cannot prove). *See* Part III, *infra*.

[19] *See* 11 U.S.C. § 502(j) (permitting reconsideration "for cause" of a claim that has been allowed or disallowed).

Court should deny Schum's invitation to excise parts of a plan that was confirmed fifteen years ago.

### B.   Schum's delay in filing his Motion is inexcusable.

Schum offers no cogent explanation for his massive delay in seeking to reopen the RRI bankruptcy, which destroys any chance he had at attempting to demonstrate "cause" to reopen or reconsider claims.  The RRI Plan was confirmed on January 8, 2004, and the RRI Case closed on December 29, 2006.  R. 378, 924. Section 350(b) of the Bankruptcy Code provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or *for other cause*." 11 U.S.C. § 350(b) (emphasis added).[20]

The Bankruptcy Court exercised its sound discretion in holding that there was no "cause" under § 350(b) or § 502(j) to reopen the case or reconsider any claims. R. 19-21.[21]  "The longer the time between the closing of the estate and the motion to reopen, however, the more compelling the reason for reopening the estate should be."  *In re Case*, 937 F.2d 1014, 1018 (5th Cir. 1991).  Courts in this Circuit have

---

[20] Bankruptcy Rule 5010 allows a case to be reopened "on motion of the debtor or other party in interest pursuant to §350(b) of the Code."

[21] To the extent Schum's Motion seeks reconsideration of allowed claims, it was prematurely brought before the Bankruptcy Court decided whether to first reopen the case, as noted in the Advisory Committee Notes of Bankruptcy Rule 3008 ("If a case is reopened as provided in §350(b) of the Code, reconsideration of the allowance or disallowance of a claim may be sought and granted in accordance with this rule.").

declined to reopen after much shorter periods. *See, e.g., In re Johnston*, 207 B.R. 142, 146 (S.D. Tex. 1996), *aff'd*, 129 F.3d 609 (5th Cir. 1997) (noting that six months pointed away from reopening).[22]

Schum's argument that he discovered "new" evidence nearly seven years ago also fails. Federal Rule of Civil Procedure 60(b)(2) requires the movant show diligence in discovering the new evidence, which must be material. *Nat'l City Golf Fin. v. Scott*, 899 F.3d 412, 418 (5th Cir. 2018). Schum alleges that the "first time that I became aware that [Zwirn] used a foreign company to fund the exit loan" occurred in the fall of 2012, when he discovered a federal order from March 1, 2010 that stated that BNLI was "a specialized investment group based in the Cayman Islands[.]" R. 445, 462.[23]

The Bankruptcy Court correctly held that the "new" evidence Schum pointed to in support of his Rule 60(b)(2) argument was not new, but allegedly discovered almost seven years before filing his Motion. R. 13. Schum's explanation for the

---

[22] As previously discussed, Schum's Motion is also barred by 11 U.S.C. § 1144's 180-day deadline. R. 23.

[23] Moreover, as described in a 2014 FCC opinion, Schum attempted to use what appears to be the exact same order during an FCC appeal. *See DFW Radio License*, 29 FCC Rcd. at 818 (noting that Schum proffered "new information" regarding his appeal of the assignment to Principle Broadcasting, which included "a federal District Court order describing 'Bernard National Loan Investors, Ltd.' as 'a specialized investment group based in the Cayman Islands'").

delay between finding this "evidence" and moving to reopen—that he needed time to investigate and accumulate evidence—is no excuse. Appellant's Br. at 41. Rule 60(b)(2) requires diligence in discovering the evidence, and Schum's allegations that he randomly searched the internet six years after the RRI Case was closed to find the "evidence" certainly does not demonstrate "diligence." R. 445. Likewise, Schum offers no evidence justifying his six-year-long alleged "investigation" after making his 2012 "discovery." *See In re Guzman*, 130 B.R. 489, 492 n.5 (Bankr. W.D. Tex. 1991) (noting that laches would bar a motion to reopen made a year and a half after certain creditors' claims were discovered). Similarly, to the extent Schum argues that the evidence presented in his Motion somehow became "new" when he filed his Motion, this argument is also without merit.[24] [25]

---

[24] Schum's protest in his "Issue 8" challenging the Bankruptcy Court's statement that he relied on the advice of opposing counsel is also irrelevant and meritless—Schum expressly argued that the attorneys who "participated in the bankruptcy proceeding" advised him to wait until the FCC process was complete in explaining why he failed to seek relief regarding his alleged "fraud" for years. Appellant's Br. at 42; R. 430.

[25] Schum asserts that the Bankruptcy Court erroneously held that his Motion was time-barred under Federal Rule of Civil Procedure 60(d)(3). Appellant's Br. at 34-37. However, the Bankruptcy Court expressly explained that it did not apply a time limitation to Rule 60(d)(3). R. 14 ("Rule 60(d)(3) allows courts to set aside a judgment for fraud on the court without a strict time limitation.") (internal quotations omitted). Instead, the court evaluated Schum's Rule 60(d)(3) fraud-on-the-court argument on the merits and flatly rejected it. R. 14-16. The court also evaluated Schum's arguments under Rule 60(b)(2)-(3) on the merits and rejected them. R. 12-14.

## II.    Schum's Motion is Equitably Moot.

Schum's attempt to reopen the RRI Case for the purpose of reconsidering the RRI Plan and RRI Confirmation Order is equitably moot.  R. 22.  Equitable mootness constrains the review and potential reversal of confirmation orders.  *In re Pac. Lumber Co.*, 584 F.3d 229, 240 (5th Cir. 2009).  Three factors guide the analysis: "(i) whether a stay has been obtained, (ii) whether the plan has been 'substantially consummated,' and (iii) whether the relief requested would affect either the rights of parties not before the court or the success of the plan."  *In re Manges*, 29 F.3d 1034, 1039 (5th Cir. 1994).  As the Bankruptcy Court rightly held, all three of those factors have been met:

1.      Schum did not obtain a stay of the RRI Plan.

2.      The RRI Plan is completely consummated.  All of the payments to creditors provided for under the RRI Plan were made years ago.  R. 378 (RRI Confirmation Order entered January 12, 2004); *see also In re Blast Energy Servs., Inc.*, 593 F.3d 418, 425 (5th Cir. 2010) (when the relief a party seeks will unravel the plan, it would be impracticable and inappropriate for a court to grant the relief, and "in such a case, the court abstains from reviewing the appeal").

3.      The relief requested by Schum—the return of certain fees due under the Exit Financing Facility approved by the RRI Plan[26]—would threaten to unwind the entire

---

[26] R. 405-08.

RRI Plan, on which third parties, including the FCC and transferees of the Radio Station Assets, have relied.  R. 22, 694-96.[27]  No step in this chain can now be reversed.  *See In re Pac. Lumber Co.*, 584 F.3d at 242 (noting that where the debtors' assets were transferred to new entities, and those entities "successfully navigated the regulatory labyrinth" to operate, reversing the confirmation order would dislodge third-party expectations); *In re CTLI, LLC*, 534 B.R. at 910 (rejecting serial litigant's second attempt to revoke a plan confirmation on the basis of non-existent fraud because the case was equitably moot, and granting the motion would "substantially unravel the Plan, significantly harming third parties.").

Equitable mootness "is a recognition by the appellate courts that there is a point beyond which they cannot order fundamental changes in reorganization actions."  *In re Manges*, 29 F.3d at 1039.  Schum's own allegations demonstrate the need for this doctrine—he argues that he is not attempting to unwind the RRI Plan, and acknowledges that the Exit Financing Facility was an "integral part" of the plan, yet he seeks the denial of claims due to Zwirn and Schulte under the Exit Financing Facility implemented by the RRI Plan.  Appellant's Br. at 10, 39-40.  Thus, Schum clearly seeks to "unscramble the egg" by unwinding *parts* of a confirmed plan in

---

[27] *Richard R. Zaragoza*, 23 FCC Rcd. at 2643.

requesting the return of fees due under the Exit Financing Facility.  R. 23, 405-08.

That he cannot do.

## III.   Schum has Failed to Demonstrate Zwirn or its Attorneys Committed Fraud.

Schum alleges that Zwirn and its attorneys committed fraud on the court under

Federal Rule of Civil Procedure 60(d)[28] by allegedly misrepresenting that Zwirn was

the lender under the Exit Financing Facility (instead of BNLI), and by omitting

BNLI's domicile.  Appellant's Br. at 22.  Schum's unsupported and conclusory fraud

allegations do not justify reopening the RRI Case under § 350(b).  *See* R. 20 (noting

that Schum's "allegations are as implausible as the relief he seeks is impractical.").

### A.   Schum cannot demonstrate fraud under Federal Rule of Civil Procedure 60.

Schum's allegations utterly fail to demonstrate any fraud, and, accordingly,

relief under Federal Rule of Civil Procedure 60(b)(2), (b)(3), or (d), made applicable

to bankruptcy cases by Bankruptcy Rule 9024, is unavailable.  The standards for

those Rules are described below:

- Rule 60(b)(2) requires that the movant demonstrate "(1) that it exercised due

  diligence in obtaining the information; and (2) that the evidence is material

---

[28] Schum seems to have abandoned arguments that he is entitled to relief under Federal Rules of Civil Procedure 60(b)(2)-(3) and thus he has waived those arguments.  *See* Appellant's Br. at 36, 40; *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 722 (5th Cir. 2010) ("Issues not briefed on appeal are waived.").  Even if he had not waived those arguments, they would fail for the reasons discussed *infra*.

and controlling and clearly would have produced a different result if present before the original judgment." *Nat'l City Golf Fin.*, 899 F.3d at 418 (quotation omitted).

- Rule 60(b)(3) requires "clear and convincing evidence (1) that the adverse party engaged in fraud or other misconduct and (2) that this misconduct prevented the moving party from fully and fairly presenting his case." *Id.* at 418-19 (internal quotation marks and quotation omitted).

- Under Rule 60(d)(3), "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978) (quotation omitted).[29]

The Bankruptcy Court did not abuse its discretion in finding that Schum satisfied none of those standards.

### B.    All of Schum's fraud arguments fail.

#### i.    Because 47 U.S.C. § 310(b) does not apply to lenders, the alleged omission of BNLI's domicile does not demonstrate fraud.

---

[29] Schum's cited cases do not change these standards and actually support rejecting Schum's fraud allegations. *See, e.g., Kenner v. C. I. R.*, 387 F.2d 689, 691-92 (7th Cir. 1968) (holding that petitioner's allegations that a tax court's decision "contained untrue statements as to matters of fact" did not constitute fraud on the court). *Cf. Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (holding that the "near-classic example" of fraud on the court was present where plaintiff fabricated a purchase agreement and filed it with the complaint).

Schum argues Zwirn committed fraud by failing to disclose the alleged foreign domicile of BNLI, the ultimate lender under the Exit Financing Facility. Appellant's Br. at 22.[30]   But Schum's argument reflects a fundamental misunderstanding of 47 U.S.C. § 310(b), which imposes restrictions on foreign *owners* of FCC licenses:

> No broadcast or common carrier or aeronautical en route or aeronautical fixed radio station license shall be granted to or held by—
>
> (1) any alien or the representative of any alien;
>
> (2) any corporation organized under the laws of any foreign government;
>
> (3) any corporation of which more than one-fifth of the capital stock is owned of record or voted by aliens or their representatives or by a foreign government or representative thereof or by any corporation organized under the laws of a foreign country;
>
> (4) any corporation directly or indirectly controlled by any other corporation of which more than one-fourth of the capital stock is owned of record or voted by aliens, their representatives, or by a foreign government or representative thereof, or by any corporation organized under the laws of a foreign country, if the Commission finds that the public interest will be served by the refusal or revocation of such license.

As the Bankruptcy Court correctly held, "the statute addresses only the nationality of the entity that held the FCC licenses (DFW Radio License) and *not* the lender (BNLI)." R. 16.   *See also Request for Declaratory Ruling Concerning the*

---

[30] The confirmed RRI Plan defines "Lenders" as "the lenders, who, from time to time, are party to the Exit Financing Facility."  R. 134.

*Citizenship Requirements of Sections 310(b)(3) & (4) of the Commc'ns Act of 1934, as amended*, 103 F.C.C. 2d 511, 519 (1985), 1985 WL 260010, *on reconsideration in part*, 1 FCC Rcd. 12 (1986); *Una Vez Mas Tex. Holdings, LLC*, 25 FCC Rcd. 13409, 13414 (2010), 2010 WL 3738771 ("There is no prohibition on relying on debt financing for all or part of a station acquisition and there is no prohibition on that financing being provided from a non-U.S. bank."). Schum even acknowledges that § 310(b) applies to *license owners*. Appellant's Br. at 37 (§ 310(b)(2) prohibits a foreign entity "from owning broadcast licenses"). Accordingly, Section 310(b) does not apply because the licensee entity, DFW Radio License, was a Texas entity.[31]

Moreover, and critically, the FCC has expressly acknowledged § 310(b) does not apply to BNLI. In the 2014 FCC letter decision denying Schum's applications for review of the assignments to Bernard Dallas and Principle Broadcasting, the FCC rejected Schum's foreign ownership allegations and explicitly noted that "Section 310(b) does not proscribe debt interests held by foreign entities[.]" *DFW Radio License*, 29 FCC Rcd. at 822 n.129. Accordingly, the lynchpin of Schum's arguments is fatally flawed, and Schum's contention that "the outcome . . . would

---

[31] R. 129 (RRI Plan provision stating that The Watch, Ltd. is a Texas limited partnership), 1005 (noting in Asset Purchase Agreement between The Watch, Ltd., DFW Radio License LLC, and Zwirn that DFW Radio License LLC is the permittee and licensee of the Radio Station Assets and is a Texas limited liability company).

have been different"[32] if the domicile of BNLI was disclosed is belied by the repeated approvals from the FCC of transfers in the face of the same arguments by Schum. *See* "Statement of the Case," Part III.B., *supra*.  Thus, the premise of Schum's fraud allegations is flatly contradicted by the facts and applicable law.

In no universe would Schum's allegations entitle him to relief under Federal Rule of Civil Procedure 60.  Schum's allegations that Zwirn hid BNLI's domicile do not constitute evidence, much less clear and convincing evidence, that Zwirn engaged in fraud under Rule 60(b)(3).  A *lender's* domicile is irrelevant, and so the statute Schum cites in support is inapplicable.  This alleged omission did not constitute any fraud, let alone fraud on the court.  *See Rozier*, 573 F.2d at 1338 (fraud on the court generally does not apply to less egregious conduct, "such as nondisclosure to the court of facts allegedly pertinent to the matter before it[.]") (quotation omitted).  *See also* R. 15 (the record did not reveal any egregious misconduct, plan, or scheme to mislead the court).

### ii.    Schum's allegations that he was misled about the identity of the lender do not demonstrate fraud.

Schum also alleges that he, RRI's attorneys, and the Bankruptcy Court were misled to believe that Zwirn would be the lender under the Exit Financing Facility rather than BNLI.  Appellant's Br. at 10, 24.  However, the fact that Schum signed

---

[32] Appellant's Br. at 43.

the execution version of the Exit Financing Facility, the signature page of which clearly names BNLI as "Lender," forecloses Schum's argument that he was in the dark about the lender's identity. R. 9, 456-57, 559-60. Despite his protests now that lender nationality was an important fact to him personally at the time of negotiating the Exit Facility, Schum acknowledges that he signed this page. Appellant's Br. at 12. Further, as the Memorandum Opinion correctly observes, Schum was a contracting party and could have inquired about the identity of the lender. R. 13.[33]

Schum asserts that the Bankruptcy Court made "conflicting findings of fact regarding the identity and domicile of the exit loan lender." Appellant's Br. at 34. But Schum's reliance on these "findings" (which were not findings regarding domicile and lender identity at all) is misplaced. He cites provisions that simply identify Zwirn as agent and lender in the context of commanding that securities issued under the RRI Plan comply with the Securities Act of 1933. R. 272-73, 379-80.

Similarly, comparing earlier certain redlined copies of the Exit Financing Facility that identified Zwirn as the lender in no way suggests fraud. Appellant's Br. at 8-9. The versions of the Exit Financing Facility that Schum points to define

---

[33] *See also See Barfield v. Howard M. Smith Co. of Amarillo*, 426 S.W.2d 834, 840 (Tex. 1968) ("As a party to arm's length business transactions, respondent had a duty to use ordinary care for the protection of its own interests and is charged with knowledge of all facts which would have been discovered by a reasonably prudent person . . .").

Zwirn as "Agent" and "financial institutions from time to time" as "Lenders." R. 165, 169, 532.  By signing the Exit Financing Facility, Schum is charged with knowledge that an institution other than Zwirn could be—and was—a Lender and could have inquired regarding that entity.  *Barfield*, 426 S.W.2d at 840.  *See also* R. 456-57, 559-60.  Moreover, even though the copy of the Exit Financing Facility that was attached as an exhibit to the RRI Plan named Zwirn as the lender on its signature page, that exhibit clearly states it is "[s]ubject to further modifications and drafting of ancillary documents."  R. 164, 265, 276, 377.  *See also* Appellant's Br. at 9. Accordingly, Zwirn and its attorneys could not have "executed a bait-and-switch fraud" by using BNLI as lender.[34]

---

[34] Schum's allegation that "V&E falsely represented to the Court that Zwirn was the lender and credit bidder at the auction . . . and winner at the auction" is also meritless. Appellant's Br. at 26-27.  Schum cites a *Notice of Secured Creditor's Debt Balance and Intention to Credit Bid at Auction* dated September 9, 2005 in The Watch's subsequent bankruptcy case, which Zwirn filed as the secured creditor holding a lien on substantially all the assets of The Watch's bankruptcy estate.  R. 773.  Schum apparently fails to understand that he gave Zwirn, as Agent under the Exit Financing Facility, a first priority lien on the Radio Station Assets to secure the principal of the loan therein.  R. 143, 149, 304.  As described *supra* at 9-10, Zwirn assigned its purchase right to Bernard Dallas, which the FCC approved.

Additionally, because there was no omission regarding BNLI's status as lender or its domicile, any assertion that the attorneys involved in the RRI or The Watch bankruptcies violated Texas Disciplinary Rules of Professional Conduct is meritless. Appellant's Br. 29-31, 41-42. *See also* R. 18. (stating that "no evidence supports Schum's conclusory allegations of misconduct by opposing counsel.").

28

Schum also fills multiple pages discussing events subsequent to the RRI Case in support of his argument that Zwirn and its attorneys allegedly hid the fact that BNLI was the lender during the earlier RRI bankruptcy.  Appellant's Br. at 17-21. These allegations are irrelevant and, again, foreclosed by the fact that the February 5, 2004 Exit Financing Facility—which Schum attached to his original Motion— clearly disclosed BNLI as the lender.  R. 559-60.[35]  In sum, Schum's repetitive, conclusory allegations that fraud occurred somewhere, somehow—which are neither supported with evidence nor grounded in any violation of any law or duty—simply cannot carry the day.

## IV.   Claim Preclusion Principles Bar Schum's Tired Allegations of Foreign Ownership.

Schum incredibly contests the Bankruptcy Court's holding that claim and issue preclusion principles apply to bar his Motion, because "[i]t was impossible to litigate the foreign lender issue prior to Schum discovering the fact."  R. 17; Appellant's Br. at 37.  But Schum clearly *has* raised the foreign ownership argument *countless times* against Zwirn, (R. 17), Bernard Dallas (R. 701-02), and even BNLI. *DFW Radio License, LLC*, 29 FCC Rcd. at 819 & n.115.  This Court should put an end to Schum's erroneous insistence that these foreign ownership restrictions apply.

---

[35] Schum has not moved to reopen The Watch bankruptcy, although he has threatened to do so "in the near future." R. 716.

*See* R. 11 (holding that Schum's "claims here are premised on the same facts he has possessed for years and the same theories federal courts and one federal agency already have considered and rejected.").

## V.    This Court Should Declare Schum a Vexatious Litigant.

Schum has demonstrated a complete unwillingness to heed any warning given by any tribunal over the years related to his frivolous filings.  But even unrepresented parties certify that when they submit a filing to the court, it is not being presented for an improper purpose, including "to harass or to cause unnecessary delay or needless increase in the cost of litigation[.]"  Fed. R. Bankr. P. 9011(b).[36]

This Court has the inherent power under 28 U.S.C. § 1651 to enjoin vexatious litigants from filing future actions without court approval.  *Newby v. Enron Corp*., 302 F.3d 295, 301-02 (5th Cir. 2002); *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980) ("A litigious plaintiff pressing a frivolous claim, though rarely succeeding on the merits, can be extremely costly to the defendant and can waste an inordinate amount of court time.").[37]  The authority under § 1651 extends to even *pro se* litigants.  *Id.   Cf. Estate of Hester v. Nationsbank*, 59 F.3d 1242 (5th Cir. 1995) (affirming sanctions against a litigant for her "relentless judicial campaign"

---

[36] *See also* Fed. R. Civ. P. 11(b).

[37] Additionally, 11 U.S.C. § 105(a) allows bankruptcy courts to sanction a party for vexatious and improper conduct.  *In re Carroll*, 850 F.3d 811, 815 (5th Cir. 2017).

and "continued pursuit of vexatious litigation against anyone and everyone remotely connected with her bankruptcy proceedings").

Countless times, courts have patiently explained to Schum that the time to air his grievances about the transfers of the Radio Station Assets has passed. Despite the patience of these courts (or maybe because of it), Schum continues to waste both Fortress's and this Court's time and resources with frivolous and vexatious filings. The time has come for Mr. Schum to be held accountable for his actions. Schum's behavior continues to heavily burden multiple tribunals, including this Court, and parties that were involved with the multiple bankruptcies of companies associated with Schum. Schum's behavior warrants a pre-filing injunction against Schum or anyone acting on his behalf from filing any further documents related to the *In re Renaissance Radio, Inc*. chapter 11 case, the *In re The Watch, Ltd*. chapter 11 case, or the Radio Station Assets without prior approval of this Court.

## CONCLUSION

Repeating identical arguments over and over again in different tribunals does not bestow those arguments with merit. Every other tribunal from which Schum has sought this, or very similar or related relief, has rejected the arguments Schum raises in this appeal, and this Court should do the same.

Dated: July 31, 2019

Respectfully submitted,

**VINSON & ELKINS LLP**

By:  */s/ Devin L. Kerns*
Matthew W. Moran, SBT # 24002642
Katherine Drell Grissel, SBT # 24059865
Devin L. Kerns, SBT # 24110081
mmoran@velaw.com
kgrissel@velaw.com
dkerns@velaw.com
2001 Ross Avenue, Suite 3900
Dallas, Texas 5201
(214) 220-7700 (Telephone)
(214) 220-7716 (Facsimile)

*Attorneys for Fortress Value Recovery Fund I LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 9,264 words.

2.      This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

*/s/ Devin L. Kerns*
Devin L. Kerns

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument has been served via electronic means as listed on the court's ECF noticing system pursuant to Local Rule 5.1(d) and Federal Rule of Bankruptcy Procedure 8011(c)(2) and to David A. Schum by e-mail at watchradio@aol.com and U.S. First Class Mail on this 31st day of July 2019.

*/s/ Devin L. Kerns*
Devin L. Kerns

US 6474365v.14

33